## 757. GRINER *et al.* v. BAGGS & PERRY.

1. Where a purchaser of fertilizers defends against the payment of the price on the ground that the fertilizers were not tagged or branded as required by law, before they were offered for sale, the burden is on him to establish the defense.

2. The act of December 18, 1901, respecting the manufacture and sale of fertilizers is by its terms exhaustive, and supersedes former regulations (excepting those expressly preserved) on the subject covered by its provisions.

3. Under the statute mentioned above, where cottonseed meal is offered for sale as a fertilizer, it is not necessary that the sacks containing it should be branded, but the manufacturer's guarantee may legally be

stamped or printed on the reverse side of the tag furnished by the agricultural department to indicate payment of the inspection fee, and attached to the sacks.

(a) This is in consonance with the practice sanctioned by the agricultural department, of which we take judicial cognizance.

Complaint, from city court of Moultrie—Judge Shipp. September 5, 1907.

Argued December 16, 1907.—Decided April 20, 1908.

*T. H. Parker*, for plaintiffs in error.   *W. A. Covington*, contra.

POWELL, J. This action arose over the purchase-price of 98 sacks of cottonseed meal sold by the plaintiffs to the defendants as fertilizing material. The defendants pleaded that the cottonseed meal was neither branded nor tagged as required by law. Their contention was that in sales of fertilizers the law requires that the guaranteed analysis shall be branded on the sacks, and also that a tag indicating payment of the inspection fee shall be attached. There was evidence from which (though it was disputed) the jury might have found that, while the sacks were not branded, they were tagged, and that the tags bore the guaranteed analysis as to the quantity of ammonia or nitrogen, which, as to fertilizers, are regarded as the same thing. The verdict was for the plaintiffs. The defendants except to the refusal of a new trial. Their assignments of error upon the admission and rejection of testimony are not sufficiently specific to present any question for review by this court. Those exceptions which are in proper form are disposed of by the following rulings.

1. The burden of proving that the fertilizers were not tagged or branded as required by law was upon the defendant. *Young v. Murray*, 3 *Ga. App.* 204 (59 S. E. 717).

2. The act approved December 18, 1901 (Georgia Laws 1901, p. 65), entitled "An act to regulate the registration, sale, inspection and analysis of commercial fertilizers, acid phosphates, fertilizer materials and chemicals, in the State of Georgia, and to consolidate all laws relating to said sales, inspection and analysis, and to repeal all other laws or parts of laws in conflict therewith," manifests the intention of being exhaustive and of superseding former regulations on the subject, except so far as they are preserved in terms by the act itself. See *Fincher* v. *Collum*, 2 *Ga. App.* 741 (2), 745, and cit. (59 S. E. 22). The present trans-

action, which occurred in 1903, will therefore be measured by that statute.

3. Under the act of December 18, 1901, supra, manufacturers and dealers are required, before offering for sale in this State any commercial fertilizer or fertilizer material, to brand upon or attach to each bag, barrel, or package the brand name, the weight, the manufacturer's address, and a guaranteed analysis of the fertilizer, "giving the valuable constituents of the fertilizer in minimum percentages only." The commissioner of agriculture is given the power of general supervision over the subject, and the authority to make further consistent rules and regulations. The valuable constituent of cottonseed meal, so far as its use as a fertilizer is concerned, is ammonia or nitrogen. For a long number of years it has been the custom not to brand the guaranteed amount of ammonia or nitrogen on the sacks, but to print it on the inspection tag, attached to the sacks; and this practice still continues, with the approval of the commissioner of agriculture. While cottonseed meal does contain some phosphoric acid and some potash, the amount thereof is so small as to be negligible; and the nitrogen alone is regarded as the "valuable constituent." By an examination of any of the bulletins of the department of agriculture it may be seen that in publishing the result of inspections made of fertilizers sold at the different factories, as to cottonseed meal the percentage of nitrogen alone is noted. The statute itself seems to leave it optional whether the analysis shall be printed on the sack or on the tag, but by a ruling of the commissioner of agriculture (Ruling No. 15), the branding of all fertilizers and fertilizer material shall be upon the sacks or packages themselves, except in the case of cottonseed meal, as to which the analysis, etc., is permitted to be printed on the tag. We are all familiar with these tags. On one side is the certificate of the commissioner of agriculture in these words, "Georgia. Cottonseed Meal. Registered. Season of [1906-1907]. T. G. Hudson, Com. Agl." On the other side, usually printed with rubber stamp, is the manufacturer's guarantee as follows: "100 lbs. Cottonseed Meal. Guaranteed analysis: 6:18 Nitrogen. Manufactured by.................. at....................." This method of complying with the statutory requirement has received the long and unbroken sanction of the agricultural department, which has the administration

of these things in charge; and only in a very plain case would we feel authorized to pronounce a practice of that so ably and intelligently officered department illegal. We take cognizance of the practice of the departments of government and give them weight in the construction of statutes. *Temple Church* v. *Terminal Co.*, 128 *Ga.* 680 (58 S. E. 157). The jury was authorized to find that the law had not been violated by the sellers; and the judgment of the court below is therefore　　　　　　　　　　　　　　*Affirmed.*